UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, a Massachusetts
Corporation,

        Plaintiff,
vs.                          CASE NO.: 8:09-cv-2144-T-33TBM

SOUTHEASTERN MECHANICAL
SERVICES, INC., a Florida
Corporation, and SAN MIGUEL
ELECTRIC COOPERATIVE, INC.,
a Texas Corporation,

        Defendants.
_____/

**ORDER**

This matter is before the court pursuant to defendant San Miguel Electric Cooperative, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion" Doc. 23) under Rule 12(b)(2) of the Federal Rules of Civil Procedure, filed on December 10, 2009. On March 15, 2010, plaintiff Liberty Mutual Fire Insurance Company filed a response in opposition to the Motion. (Doc. 32.) On March 29, 2010, San Miguel filed a reply to Liberty Mutual's response. (Doc. 34.) For the reasons that follow, the Motion is due to be **GRANTED.**

**I.**   **Factual Background and Procedural History**

This is a declaratory judgment action in which Liberty Mutual requests that this Court declare that Liberty Mutual does not have a duty to indemnify Southeastern in a claim

1

brought against Southeastern by San Miguel.[1] Liberty Mutual contends that there is no coverage under the insurance policy as a whole, and specifically under exclusions A, J (5 and/or 6), L, and M. (Doc. 1 at 10-14.) In response to Liberty Mutual's complaint (Doc. 1), San Miguel has filed a Motion to Dismiss for Lack of Personal Jurisdiction, which is at issue in this Order. (Doc. 23.) The facts giving rise to these developments are set out in the paragraphs below.

San Miguel, a Texas corporation with its principal place of business in Christine, Texas, is an electric cooperative that generates and sells electricity through an electric generation facility that it owns and operates near Christine, Texas. (Doc. 1 at 2.) Liberty Mutual is a Massachusetts corporation with its principal place of business in Boston, Massachusetts. (Id.) Southeastern, a mechanical repair business, is a Florida corporation with its principal place of business in St. Petersburg, Florida. (Id.)

In Spring 2007, San Miguel scheduled an outage at its Generation Plant to perform maintenance. (Id.) After discovering thinning of boiler tubes, San Miguel consulted with Southeastern regarding the proper repair for the tubes,

---

[1] San Miguel filed suit against Southeastern on January 21, 2009, in the United States District Court, Western District of Texas, San Antonio Division, Case No. 5:09-cv-00056-FB. (Doc. 1 at 2.)

and the two companies then entered into a contract for repairs on March 29, 2007. (Id.) This contract required Southeastern to name San Miguel as an additional insured on any insurance policy Southeastern carried that was related to the maintenance performed by Southeastern during San Miguel's Spring 2007 outage. Id.

In accordance with the contract's purchase order, Southeastern was to weld overlay the boiler tubes with alloy 70-S to repair the thinning boiler tubes. (Doc. 1 at 4.) However, during the course of Southeastern's weld overlay work, improper welding rods were used in the performance of the weld overlay of the thin tubing. (Id.) It later became apparent from subsequent testing that the improper welding rods had resulted in leaks in the repaired tubes. (Id.) Due to numerous unsuccessful repair attempts by Southeastern, the plant was shut down for longer than its planned outage and, thus, San Miguel lost revenue from electricity generation. (Id.)

**II. General Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 373 F.3d 1250, 1262 (11th Cir. 2004). Further,

3

this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case of personal jurisdiction. Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. S & Davis Int'l, Inc. v. The Republic of Yemen, 218 F.3d 1292, 1303 (11th Cir. 2000). Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).

### III. Analysis

To determine jurisdiction over a non-resident defendant, courts must engage in a two part analysis. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). First, courts are to consider the jurisdictional question under a state's long-arm statute. Id. If there is a basis for asserting personal

4

jurisdiction under the state statute, courts must next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment, so that "maintenance of the suit does not offend traditional notions for fair play and substantial justice." Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A federal or state court may only exercise personal jurisdiction if both prongs of the analysis are satisfied. Id.

San Miguel asserts the following general arguments in support of its Motion: (1) San Miguel is not reached by the Florida Long-Arm Statute and (2) exercise of jurisdiction over San Miguel would violate Due Process. For the reasons below, the Court is persuaded by San Miguel's arguments and finds that asserting general or specific personal jurisdiction over San Miguel would not comport with either the requirements of Florida's Long-Arm Statute or the requirements of Due Process.

**A.  The Florida Long-Arm Statute**

The reach of the Florida Long-Arm Statute is a question of Florida law, and thus "Federal courts are required to construe the law as would the Florida Supreme Court." Oriental Imps. & Exps., Inc. v. Maduro Curiel's Bank, 701 F.2d 889, 890-891 (11th Cir. 1983). Additionally, "absent some indication that the Florida Supreme Court would hold

5

otherwise, [federal courts] are bound to adhere to the decisions of [Florida's] intermediate courts." <u>Polskie Linie Oceaniczne v. Seasafe Transp. A/S</u>, 795 F.2d 968, 970 (11th Cir. 1986).

Florida Statute Section 48.193 provides, in relevant part, that personal jurisdiction may be asserted over defendants who contract to "insure any person, property, or risk located within this state at the time of contracting," Fla. Statute § 48.193(1)(d), or defendants who are "engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise...whether or not the claim arises from that activity." Fla. Statute § 48.193(2).

In its response, Liberty Mutual argues the following: (1) San Miguel's 135 contracts with Florida companies in the amount of approximately $10 million for various services over the past five years constitute substantial and not isolated activity within the State of Florida, subjecting San Miguel to general jurisdiction in Florida under section 2 of the Long-Arm Statute (Doc. 32 at 5) and (2) San Miguel's mandate that it be added as an insured under Southeastern's Policy with Liberty Mutual subjects San Miguel to specific jurisdiction under section 1(d) of the Florida Long-Arm Statute. (<u>Id.</u> at

6

16.) This Court finds that both arguments are without merit and, as such, concludes that San Miguel is not reached by the Florida Long-Arm Statute.

### 1. **General Jurisdiction Under the Florida Long-Arm Statute**

"Florida cases have found 'continuous and systematic business contacts' to confer general jurisdiction where a nonresident defendant's activities are extensive and pervasive." Trs. of Columbia Univ. v. Ocean World, S.A., 12 So. 3d 788, 793 (Fla. 4th DCA 2009). It is also well settled under Florida law that mere purchases within the state of Florida by a non-resident, without more, are insufficient to satisfy the Due Process requirement of minimum contacts. Marsh Supermarkets, Inc. v. Queen's Flowers Corp., 696 So. 2d 1207, 1209 (Fla. 3d DCA 1997); see also Aluminator Trailers, L.L.C. v. Loadmaster Aluminum Boat Trailers, Inc., 832 So. 2d 822, 823 (Fla. 2d DCA 2002) (same).

Even if found to have been conducting business in Florida due to purchases, a defendant's level of business in Florida is insufficient to constitute "continuous and systematic business activities" where only a de minimis percentage of the company's total volume of business and its yearly revenue was derived from its business relationships in Florida. See Snow

7

v. Directv, Inc., 450 F.3d 1314, 1319 (11th Cir. 2006) (declining to exercise general jurisdiction where defendant derived less than 1% of its revenues from matter connected to Florida); Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (declining to exercise general jurisdiction where defendant had only six Florida clients who accounted for, at most, less than 5% of its gross revenue).

While certain aspects of the Florida Long-Arm Statute and Due Process Analyses are unique, the "substantial and not isolated activity" requirement of the Florida Long-Arm Statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contacts requirement for general jurisdiction under the Fourteenth Amendment. Kertesz v. Net Transactions, Ltd., 635 F.Supp. 2d 1339, 1345 (S.D. Fla. 2009); see also Woods v. Nova Cos. Belize, Ltd., 739 So. 2d 617, 620 (Fla. 4th DCA 1999) ("'Substantial and not isolated activity' has been found to mean 'continuous and systematic general business contact' with Florida.... This 'continuous and systematic' contacts standard was the standard enunciated by the Supreme Court in Helicopteros, [citation omitted] as sufficient to fulfill the due process requirements of minimum contacts when asserting

general jurisdiction.")

Though it may be undisputed that San Miguel has entered into at least 135 contracts with Florida companies for $10.4 million over the last five years, all of these contracts have been for purchases of goods or services.[2] (Doc. 34 at 6.) San Miguel has not made any sales in Florida. In fact, San Miguel sells electricity to only two companies, both of which are located in Texas. San Miguel has also offered evidence that its purchases from Florida have made up no more than 2.33% of its total expenditures in any given year since 2005. (Doc. 34-Ex. A-1.) Given such undisputed facts, the Court agrees with San Miguel's argument and finds that San Miguel's contracts are insufficient to satisfy the Florida Long-Arm Statute's substantial and not isolated activity requirement for general jurisdiction.

### 2. Specific Jurisdiction Under the Florida Long-Arm Statute

To bolster its position that San Miguel subjected itself to specific jurisdiction in Florida, Liberty Mutual directs the Court's attention to San Miguel's mandate that it be added as an additional insured under Southeastern's Policy. (Doc. 32 at 16.) The limited case law on the subject, however,

---

[2] Liberty Mutual does not contest this fact.

supports San Miguel's argument that being a potential third party beneficiary of an insurance policy, in and of itself, does not bring a defendant within the reach of section 1(d) of the Florida Long-Arm Statute. Chicago Ins. Co. v. Lammers, 6:06-cv-658-Orl-28JGG, 2006 U.S. Dist. Lexis 97079, *5-6 (M.D. Fla. Oct. 31, 2006).[3] Even if the Court were to accept Liberty Mutual's argument that San Miguel's mandate constituted a "contract to insure" under the Florida Long-Arm Statute, this Court agrees with San Miguel that the person, property, or risk in such a case would be San Miguel. Because San Miguel is located in Texas rather than Florida, there would be no insured property in Florida to bring San Miguel within section 1(d) the Florida Long-Arm Statute.

**B. Due Process**

The second step of the jurisdiction analysis, whether there is a violation of Due Process, is also a two part inquiry. Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389 (11th Cir. 1988). The Court must first decide whether San

---

[3] Liberty Mutual argues that San Miguel's reliance on Lammers is misplaced. In that case, the parties seeking dismissal had no contacts with Florida nor did they attempt to be named as additional insureds. However, this does not change the fact that Liberty Mutual has offered no case law in support of the proposition that someone who is being insured, rather than engaging in the act of insuring, should fall under section 1(d) of the Florida Long-Arm Statute.

Miguel has established minimum contacts with Florida. Id. Even if minimum contacts are established, the exercise of personal jurisdiction over San Miguel cannot offend traditional notions of fair play and substantial justice. Id.

### 1. **Minimum Contacts**

With respect to minimum contacts, the Court must determine whether such contacts are sufficient to confer general jurisdiction, specific jurisdiction, or both. See Madara, 916 F.2d at 1516. "General personal jurisdiction...arises from a defendant's contacts with the forum state that are unrelated to the cause of action being litigated." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). It "require[s] a showing of continuous and systematic general business contacts between the defendant and the forum state." Id. The contacts must be "especially pervasive and substantial to satisfy section two of the Florida Long-Arm Statute." Gen. Cigar Holdings, Inc. v. Altadis, S.A., 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002). Specific jurisdiction, on the other hand, arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. Consol Dev. Corp., 216 F.3d at 1291. To establish sufficient minimum contacts for purposes of specific jurisdiction, the defendant's contacts

with the forum state must satisfy three criteria:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, this invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

McGow v. McCurry, 412 F.3d 1207, 1214 (11th Cir. 2005) (quoting Francosteel Corp. v. M/V Charm, 19 F.3d 624, 627 (11th Cir. 1994)).

The "substantial and not isolated activity" requirement of the Florida Long-Arm Statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contacts requirement for general jurisdiction under the Fourteenth Amendment. Kertesz, 635 F. Supp. 2d at 1339 (S.D. Fla. 2009). As such, the Court finds that San Miguel's contracts with Florida companies are not sufficiently "continuous and systematic" to establish general jurisdiction over San Miguel under the Due Process requirements of the Fourteenth Amendment. See generally, Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 418 (1984) (mere purchases in forum state are insufficient to warrant exercise of general jurisdiction over a nonresident defendant).

A finding on general jurisdiction does not bring the

analysis to an end. Liberty Mutual has asserted that San Miguel's mandate that it be added to Southeastern's insurance Policy as an additional insured confers specific jurisdiction over San Miguel under the Fourteenth Amendment. Thus, this Court must also determine the following: (1) whether Liberty Mutual's complaint arises out of San Miguel's mandate that it be added to the Policy as an additional insured; (2) whether San Miguel's mandate constitutes purposeful availment of conducting activities within Florida; and (3) whether San Miguel could reasonably anticipate being haled into a Florida court for the current action due. See McGow, 412 F.3d at 1214. An answer in the affirmative as to all three questions is required for this Court to assert specific jurisdiction over San Miguel, and thus each question is analyzed separately in the following paragraphs.

In order to find that Liberty Mutual's complaint arises out of San Miguel's mandate, there must be a "substantial connection" between San Miguel's activities and the State of Florida, and such activities must be a proximate cause of Liberty Mutual's complaint. Madara, 916 F.2d at 1517. This Court is not persuaded that San Miguel's mandate that it be added to Southeastern's Policy is a proximate cause of Liberty Mutual's complaint. More likely, the proximate cause of

Liberty Mutual's complaint is Southeastern's actions in the State of Texas.

The next issue to be determined is whether San Miguel's mandate constitutes purposeful availment of conducting activities within Florida. The Court finds that the answer to this question is "no" for two reasons: (1) San Miguel's mandate is present in every one of its contracts, and thus there was no specific direction of activity at the State of Florida in the present case and (2) this Court is not convinced that San Miguel had any particular reason to know that Southeastern's policy was "issued and delivered" in the State of Florida.

As to the final specific jurisdiction question, Liberty Mutual has not succeeded in persuading the Court that San Miguel could have reasonably anticipated being haled into a Florida court. The Court places particular emphasis on the fact that San Miguel's contracts with Florida companies comprise only a small percentage of its total annual expenditures, and the fact that it is undisputed that San Miguel inserts its insurance mandate into every contract that it enters into.

### 2. **Fair Play and Substantial Justice**

San Miguel has not established minimum contacts with the

14

State of Florida, and thus the only question left to be determined is whether traditional notions of fair play and substantial justice compel the assertion of personal jurisdiction over San Miguel. While courts rely on a number of factors when conducting an analysis of traditional notions of fair play and substantial justice, there are three factors of particular importance in this case: (1) the burden on the defendant in defending the lawsuit, (2) the forum state's interest in adjudicating the dispute, and (3) the plaintiff's interest in obtaining convenient and effective relief. Madara, 916 F.2d at 1517.

Minimum requirements of "fair play and substantial justice" may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposely engaged in forum activities. Id. Conversely, these considerations may serve to establish the reasonableness of asserting personal jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Id.

Upon reviewing the circumstances of the case, the Court is not persuaded that the traditional notions of fair play and substantial justice compel an outcome on either side of the jurisdictional issue. While Liberty Mutual may have an interest in obtaining convenient and effective relief in

Florida, this interest is at least partially if not fully counterbalanced by the burden that would be placed on San Miguel if it were forced to litigate in the State of Florida. Liberty Mutual also argues that "Florida's interest in resolving a dispute over a contract pursuant to which insurance benefits could be provided to a Florida insured is substantial." (Doc. 32 at 18.) Because Southeastern will remain in the case, however, Florida will not be deprived of its interest in resolving such a dispute. The defendant not remaining in the case, San Miguel, is a Texas corporation with its principal place of business in Texas. Additionally, Liberty Mutual has not, at any time, attempted to argue that San Miguel is a necessary party to this action. Traditional notions of fair play and substantial justice do not, in themselves, compel the assertion of jurisdiction over San Miguel in the current action.

IV. **Conclusion**

Based on the forgoing analysis, the Court finds the following: (1) San Miguel does not fall within reach of the Florida Long-Arm Statute, and thus asserting jurisdiction over San Miguel would be improper under Florida law and (2) asserting jurisdiction over San Miguel in Florida would violate Due Process, because San Miguel has not established

minimum contacts and traditional notions of fair play and substantial justice do not compel assertion of jurisdiction over San Miguel. Therefore, the Court grants the Motion to Dismiss for Lack of Personal Jurisdiction.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

1. The Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 32) is **GRANTED**.
2. San Miguel is dismissed from the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>18th</u> day of June 2010.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All counsel of record